**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael Lee SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 13, 2004.

Filed Jan. 11, 2005.

MaryJean Glick, Lancaster, for appellant.

Alina L. Andreoli, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: FORD ELLIOTT, JOYCE and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 In this appeal from his judgment of sentence for aggravated assault, appellant challenges the prosecutor's selection of jurors and the enhancement of his sentence based on his prior record of violent crimes. We affirm.

¶ 2 Appellant stood trial in Lancaster County after he stabbed a fellow resident at the drug and alcohol rehabilitation center where he lived. The victim identified appellant as the person who committed the crime and other residents in the home corroborated the victim's version of events. Appellant was apprehended immediately and charged with attempted murder and aggravated assault. He was convicted by a jury of aggravated assault and sentenced to 25 to 50 years in prison pursuant to 42 Pa.C.S.A. § 9714. This timely appeal followed.

■ ¶ 3 Appellant first claims that the trial court erred in permitting the Commonwealth to exercise two peremptory challenges against two nonwhite jurors. During jury selection, appellant made what is known as a Batson[1] claim, asserting that the prosecutor was seeking to strike jurors based on race. In his brief, appellant properly sets out the standard by which Batson claims are to be reviewed by the trial court:

> First, the defendant must make a prima facie showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the prima facie showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror[s] at issue; and third, the trial

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

court must make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Commonwealth v. Harris*, 572 Pa. 489, 817 A.2d 1033, 1042 (2002), *cert. denied*, 540 U.S. 1081, 124 S.Ct. 939, 157 L.Ed.2d 756 (2003).

■ ¶ 4 Appellant is African American, as is his victim. The two jurors stricken by the Commonwealth and challenged by appellant were juror # 186, an Asian male, and juror # 260, a male whose race was listed as "other."[2] As appellant properly notes, a defendant may make a *Batson* challenge even if the juror in question is not a member of the defendant's race. *Id.* at 1043 (relying on *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).

¶ 5 The trial judge required the prosecutor to place his reasons for the challenged strikes on the record. The record reflects that juror # 186 was an occupational therapist who the prosecutor believed might have a greater knowledge of anatomy than the other jurors, thereby influencing the other jurors on the issue of serious bodily injury. Further, the prosecutor noted that this juror stated in his questionnaire that he liked to hear both sides to a story before making a decision. This fact troubled the prosecutor because appellant had no duty to testify in the case. The trial court deemed the prosecutor's explanations with respect to juror # 186 race neutral.

¶ 6 When asked to explain why he struck juror # 260, the prosecutor stated that he was seeking to "up the average age of the jury" and this juror was one of four remaining jurors under age 25. The prosecutor said he used his last strike on juror # 260 because the three other "young" jurors were more appealing choices. One was a resident in the neighborhood where the stabbing occurred; one stated that he was more inclined to side with police and the Commonwealth and one indicated that his best friend had been stabbed. Because the prosecutor had just one peremptory strike left, and he wished to use it on a young juror, he chose juror # 260. Again, the trial court deemed the reasons for the strike race neutral.

■ ¶ 7 With regard to appellate review of *Batson* claims, we recognize that the trial court is in the best position to observe the proceedings and so is called upon to make a credibility determination with regard to counsel's proffered reasons for a strike. *Commonwealth v. Doyen*, 848 A.2d 1007, 1013 (Pa.Super.2004), *appeal denied*, — Pa. —, 857 A.2d 677 (2004). The trial court's determination may be overturned on appeal only if it is "clearly erroneous." *Id.*

¶ 8 Our review of the record leads us to conclude that the trial court's decision here was not in error. The prosecutor offered race-neutral explanations for his use of peremptory strikes; those explanations appear reasonable in light of the record and the trial court found the prosecutor credible. Under these circumstances, we find no basis for upsetting the trial court's ruling.

¶ 9 Appellant next claims that the Commonwealth failed to establish that he committed prior violent felonies that brought him within the ambit of § 9714, sometimes referred to as the "three strikes" law. The relevant parts of the statute are set out below:

(a) Mandatory sentence.—

---

**2.** The record does not reflect the race of juror # 260. He apparently did not consider himself a member of any of the races listed on the juror form.

\* \* \*

(2) Where the person has at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

\* \* \*

(d) Proof ·at sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court ·shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if

this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated or an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

\* \* \*

(g) Definition.—As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault ... rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson ... kidnapping, burglary ... robbery ... or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or equivalent crime under the laws of this Commonwealth ....

42 Pa.C.S.A. § 9714.

■ ¶ 10 In support of application of § 9714, the Commonwealth contended that appellant previously was convicted of aggravated assault in Pennsylvania on September 22, 1980, and armed robbery in North Carolina on July 17, 1987. The Commonwealth provided criminal extracts detailing these convictions and · appellant concedes that the extracts describe a man with his same name, birth date and physical characteristics. However, appellant argues that this information is "largely immaterial" as it could have been mistakenly entered into the databases.

¶ 11 At sentencing, the Commonwealth offered the following items into evidence: a certified court document from Dauphin County detailing Michael Smith's 1980 conviction in Pennsylvania (for which he

received a sentence of one to five years at Camp Hill Prison); a certified court document from Gaston County, North Carolina detailing Michael Smith's 1987 conviction in North Carolina (for which he received a 14 year prison sentence); an FBI "rap sheet" for Michael Smith which was received by Lititz Police after they submitted appellant's fingerprints for identification;[3] and an NCIC (National Crime Information Center) "rap sheet" detailing Michael Smith's criminal history.[4] The prosecutor carefully cross-referenced the information set out in each document, which led to the reasonable conclusion that all of the documents concerned the same person, that is, appellant.

¶ 12 Appellant draws our attention to the fact that some of the FBI fingerprint classification numbers for Michael Smith in the 1980 Pennsylvania conviction are different from some of the FBI fingerprint classification numbers for Michael Smith in the 1987 North Carolina conviction. But although some of the individual classification numbers for each fingerprint varied, the FBI number assigned to appellant was the same for all offenses. Therefore, according to FBI records, the Michael Smith arrested and convicted in this case is the same Michael Smith arrested and convicted in Dauphin County in 1980 and in Gaston County, North Carolina in 1987.

¶ 13 Further, a number of facts attributed to the Michael Smith with the prior convictions were confirmed through appellant's interaction with police, court staff and probation department personnel in connection with this case. These facts include appellant's place of birth (Charlotte, North Carolina), appellant's residence at Camp Hill Prison in 1981, appellant's return to North Carolina at the time the North Carolina crimes were committed and an identifying tattoo on appellant's arm.

¶ 14 We are satisfied that the trial court correctly found the Commonwealth met its burden of establishing appellant's convictions for prior violent crimes by a preponderance of the evidence.

¶ 15 Appellant's final claim is that § 9714 is prohibited by 1 Pa.C.S. § 1926, which provides that no statute shall be construed as retroactive unless clearly and manifestly so intended by the General Assembly. Appellant claims that as applied in this case, § 9714 is retroactive and the legislature did not intend it to apply retroactively.

¶ 16 Appellant relies on a recent case from the Commonwealth Court, *Alexander v. Commonwealth, Department of Transportation*, 822 A.2d 92 (Pa.Commw.2003), which held that the ignition interlock law was retroactive because it gave appellant's prior drunk driving conviction "a legal effect different from that which it had under the law in effect when it transpired." *Id.* at 94. Concluding that the legislature had not intended retroactivity, the *Alexander* court rejected application of the ignition interlock law based on § 1926.

■ ¶ 17 We reject appellant's claim for several reasons. First, we are not bound by decisions of the Commonwealth Court; therefore, the *Alexander* case is not controlling here.[5] Second, we do not

---

3. The FBI extract listed the Dauphin County and North Carolina convictions.

4. The NCIC extract matched appellant's birth date and social security number. It too listed the Dauphin County and North Carolina convictions.

5. *Alexander* has been granted review by the Pennsylvania Supreme Court. *Alexander v. Commonwealth Department of Transportation,* 578 Pa. 29, 849 A.2d 1129 (2004).

agree that § 9714 is necessarily "retroactive." It did not "impose new legal burdens on past transactions or occurrences." *McMahon v. McMahon,* 417 Pa.Super. 592, 612 A.2d 1360, 1364 (1992). It did not increase the sentences appellant received for his prior convictions. Rather, § 9714 applies "prospectively only to future offenses and [does] not change the punishment for the predicate offense." *Commonwealth v. Brown,* 741 A.2d 726, 732 (Pa.Super.1999) (holding that § 9714 is not an ex post facto law), *appeal denied,* 567 Pa. 755, 790 A.2d 1013 (2001). Finally, even if we were to deem § 9714 "retroactive" on some level because it takes into account convictions that occurred prior to its enactment, we would find that the legislature surely intended such a result, thereby satisfying § 1926.

¶ 18 We find no merit to any of appellant's claims and so are compelled to affirm.

¶ 19 Judgment of sentence affirmed.